WILLCOX & GIBBS SEWING MACH. CO. v. INDUSTRIAL MFG. CO. et al.

(Circuit Court, D. New Jersey. May 28, 1908.)

PATENTS—INFRINGEMENT—SEWING MACHINE.

   The Willcox & Borton patent, No. 472,094, for improvements in sewing machines, claim 1, construed in the light of the specification and drawings as required by its closing words, "substantially as described," has as one element of the combination therein claimed a single-implement, double-jawed, looper, and is not infringed by a machine having a two-implement looper; the two parts being separately operated.

In Equity. On final hearing.

Howson & Howson, for complainant.
Briesen & Knauth, for defendants.

LANNING, District Judge. By its bill, the complainant alleges that the defendants are infringing patents Nos. 472,094 and 472,095, both for new and useful improvements in sewing machines, and both granted April 5, 1892, to the complainant as assignee of Charles H. Willcox and Stockton Borton. It is alleged that the inventions described in the two patents are capable of conjoint use in one and the same machine, that the complainant has so used them, and that the defendants are making and selling sewing machines each having and containing conjointly the improvements described in the two patents. At the close of the complainant's principal proofs, it appeared that infringement of claims 1, 9, and 14 of patent No. 472,094, and of claims 11 and 17 of patent No. 472,095, was insisted upon. After the defendant's main proofs had been taken, and the complainant had taken a part of its rebuttal proofs, the complainant's counsel announced that, as he was then advised, he would rely only on claim 1 of patent No. 472,094. That is the only claim now relied on. The defendants insist that the proofs fail to show infringement.

The claim relied on is as follows:

"The combination, with the needle, the looper, the feed mechanism, and the trimming mechanism, of the main shaft extending sidewise across the machine beneath the bed-plate, eccentrics carried by said shaft for operating the trimmer, needle, looper and feed, and the needle-carrying and shear-carrying arms or levers extending in directions from the rear to the front of the machine, substantially as described."

The contest hinges on the nature of the looper used by the defendants and the nature of the looper covered by claim 1 of the patent in suit. The looper particularly described in the complainant's patent is a single-implement looper. The specification of the complainant's patent, in referring to the movement of the needle and the looper, says:

"The novel and important feature of this part of the invention consists in the relative arrangement of the needle and the double-jawed looper, so that the line of the needle's motion is oblique to the plane in which the looper moves. In the practical embodiment of this principle it is immaterial which of these devices is made to move obliquely with reference to the plane of the cloth-plate, and any arrangement in which a double-jawed looper having its movement all in one plane co-operates with a needle so moving with reference thereto that it lies on one side of the looper when both are above the cloth and on the other when both are beneath the cloth would be within the invention."

While the application for the patent was pending in the Patent Office the paragraph last above quoted, as it then stood, was objected to on the ground that the statement of the invention therein contained was too broad in view of the state of the art. The applicants thereupon amended the paragraph by inserting the word "double-jawed" where it now appears for the second time in the paragraph.

Figures 11 to 16 of the patent, which are here reproduced, show the various positions of the looper.

The specification of the patent also says:

"The looper must have two jaws, the upper one to seize the loop below the cloth and the other and lower one to distend the loop and hold it distended above the cloth, so that the needle may pass through the loop. The loop releases itself from the upper jaw and falls on the lower one just after the work has passed the position shown in Fig. 14. * * * The looper must move inward below the cloth and seize a loop, then outward after it has seized

a loop, next upward above the cloth, and, finally, inward to hold the loop, so that it may be entered by the needle, and it must return again in reverse motion."

This language of the specification clearly describes, and the figures illustrate, the movements of the needle and the single-implement looper in the process of forming a stitch. The specific form of looper described is a single-implement, and not a double-implement, one. Moreover, it is declared that the looper "must have" two jaws, and that it "must move inward below the cloth and seize a loop; then outward after it has seized a loop, next upward above the cloth, and, finally, inward to hold the loop, so that it may be entered by the needle," and that it "must return again in reverse motion." Now, the defendant's looper is not a "double-jawed," single-implement looper. It does not have "its movement all in one plane." It does not operate as the complainant's single-implement looper does. It is a two-implement looper. The two implements are separately operated. Mr. Livermore, one of the complainant's experts, admits that the motion of the defendant's looper is not all in one plane; that it does not have two jaws, the upper one to seize the loop below the cloth and the other and lower one to distend the loop and hold it distended above the cloth; that it does not move inward below the cloth and seize a loop; and that he recognizes and is willing to state that certain features or characteristics described as essential to the looper mechanism of the patent in suit are not found in the defendant's looper mechanism.

But the complainant argues that the claim now sued on is not limited to a double-jawed, single-implement looper, and that the language of the specification above quoted is descriptive merely of the particular type of looper shown in the drawings of the patent, and that the invention, as disclosed by a fair reading of all parts of the patent, covers the defendant's looper. This argument is based largely upon the following statement in the specification of the patent:

"The machine represented in the drawings is one which makes an overseam, and is intended specially for sewing knit goods; and our improvements are chiefly applicable to machines making some variety of overseam. The special kind of overseam made by the machine shown in the drawings is formed of a single thread and by means of an eye-pointed piercing-needle and a looper which seizes a loop of thread below the cloth, then carries that loop above the cloth, holds it in the path of the needle until the needle enters this loop, and finally drops the loop after it has been entered by the needle in its descent."

It is true that this language, read alone, leaves one to infer that the patentees might claim their invention to cover improvements other than those specifically shown in the drawings, and that the drawings were designed, not to limit the invention to the particular improvements shown by them, but to illustrate the general character of the invention. The patent law, however, provides that, when the nature of the case admits of drawings, the applicant shall furnish them and file them in the Patent Office, and that a copy of the drawings so furnished and filed shall be attached to the patent as a part of the specification. Rev. St. § 4889 (U. S. Comp. St. 1901, p. 3383).

The proofs in the present case do not satisfy me that a man skilled in the art, with the patent in suit and its drawings before him, could construct the defendants' looper. Besides, the patentees have declared in the specification, with so much emphasis, that the looper must have two jaws and must move in a particular manner, that the defendants' looper seems to be wholly outside of the scope of the invention described. Claim 1, now sued on, by the use of the words "substantially as described," expressly refers to the specification for the description of the combination referred to in the claim. In the combination is the looper. That looper is a single-implement looper, a double-jawed looper, a looper whose movement is inward and outward, and upward and inward again, with a reverse motion, all in one plane. The patent says it must be exactly so. The claim, therefore, cannot have the liberal construction contended for.

The case of Willcox & Gibbs Sewing Machine Co. v. Merrow Machine Co., 93 Fed. 206, 35 C. C. A. 269, has not been overlooked. In that case the defendant's looper was a single-implement one, and the court held it to be "double-jawed." It is clear, too, that the movements of the defendant's looper were all in one plane. The defendant's machine was therefore found to be an infringement of claims 2 and 5 of the patent now in suit. That case was very different from the one now before this court. The specification of the patent in suit declares that "the machine has been contrived with reference to running it at a very high rate of speed." The record of the case shows that in the Merrow Case the complainant contended that a double-implement looper was necessarily slower in operation than a single implement looper, and the Circuit Court of Appeals said:

"The two-implement looper is one which performs the operation of seizing the loop of needle thread below the cloth, and presenting it in proper position above the cloth, by the aid of two separate pieces of mechanism. These have to be separately operated, and the operating mechanism becomes more complicated. Not only is the improvement of the patent meritorious as tending towards simplicity, but complainant's expert testifies—and no one contradicts him—that, the more complicated the mechanism involved, the more difficult it becomes to run at a high speed, while the multiplication of relatively moving implements, which co-operate in their action upon one thread, increases liability to skip stitches. Certainly the device of the patent in suit . is simpler, dispensing with one independently operated part. It is susceptible of high speed (apparently by reason of its greater simplicity), while the earlier two-implement machines were slow, and apparently were not susceptible of being made faster."

What the patent in suit did was to disclose an invention by which a high rate of speed could be had with a single-implement looper. What the defendants in the present case have done is to make a machine which can be operated at a high rate of speed with a two-implement looper. The defendants have done what the Circuit Court of Appeals in the Merrow Case said, in the light of the facts presented to them, it was apparently impossible to do.

I think the complainant has failed to show infringement, and that the bill of complaint should be dismissed, with costs.